**Milvio DUARTE, Movant,**

v.

**UNITED STATES of America, Respondent.**

**No. 03 CV 1650(CSH).**
**No. 99 CR 0192(SCH).**

United States District Court, S.D. New York.

Nov. 6, 2003.

Milvio Durate, Lewisburg, PA, Pro se.

James B. Comey, United States Attorney Southern District of New York (I. Bennett Capers, Assistant United States, of Counsel), New York City, for Respondent.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Milvio Duarte has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. For reasons set forth below, Duarte's motion is denied.

### Background

On October 14, 1999, following a jury trial, Duarte was found guilty on several charges arising out of the murder of Nelson Almonte, a confidential informant for the Drug Enforcement Administration. Prior to his death, Mr. Almonte had supplied law enforcement officials with details relating to Duarte's participation in a narcotics racket. Based on this evidence Duarte was arrested and arraigned on narcotics and racketeering charges. Duarte was released on bail and used this opportunity to arrange a murder-for-hire with Almonte as the victim. The scheme was carried out and Duarte paid his hired assassins in cocaine.

For his part in the scheme, Duarte was convicted of conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(5) (Count One), murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Two), murder of a witness to prevent testimony in violation of 18 U.S.C. §§ 1512(a)(1) and 2 (Count Three), and using and carrying a firearm in relation to a violent crime, in violation of 18 U.S.C. § 924(c) (Count Five). Duarte was acquitted on Count Four, under which he was alleged to have participated in the murder of Almonte in retaliation for evidence and testimony Almonte had given and would give against Duarte.

On September 12, 2000 judgment was entered and Duarte was sentenced to ten years imprisonment on Count One and life imprisonment on Counts Two and Three, with the sentences to run concurrently. Duarte was also sentenced to five years of imprisonment on Count Five with this sentence to run consecutively.

On September 20, 2000 Duarte filed a timely notice of appeal. The Second Circuit Court of Appeals denied this appeal by summary order reported at *U.S. v. Duarte*, 14 Fed.Appx. 46, 2001 WL 754478 (2nd Cir.2001). Duarte then filed a petition for a writ of certiorari with the United States Supreme Court. This petition was denied on February 19, 2002. *Duarte v. United States*, 534 U.S. 1139, 122 S.Ct. 1089, 151 L.Ed.2d 988 (2002). Duarte filed the present motion on February 15, 2003 by placing a copy in the mailbox at the United States Penitentiary at Lewisburg, Pennsylvania. Because Duarte's motion was filed within one year of the Supreme Court's denial of his petition for a writ of certiorari, the motion is timely under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), amending 28 U.S.C. § 2255. The government does not contend otherwise.

*Discussion*

On his motion, Duarte asserts three grounds for relief. First, he claims that this Court, in imposing a life sentence, made determinations of fact that should have been left to the jury, denying Duarte his statutory and constitutional rights to a jury trial. Second, he claims that his attorney at sentencing provided ineffective assistance by not objecting to this alleged error, thereby denying Duarte his constitutional right to the effective assistance of counsel. Third, Duarte claims that the jury instruction was defective, in that it allowed the jury to convict him on the firearms charge in Count Five without ensuring that the jury was unanimous in finding Duarte guilty on one or more of the predicate crimes charged in Counts One, Two, or Three.

*Duarte's First Asserted Ground for Relief*

■ In asserting his first claim, Duarte relies on the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In *Apprendi*, the Supreme Court held that the Sixth Amendment does not permit a trial judge in a criminal case to determine facts during sentencing that lead to either "a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone," *Apprendi*, 530 U.S. 466 at 483, 120 S.Ct. 2348, 147 L.Ed.2d 435, or "a sentence more severe than the statutory maximum for the offense established by the jury's verdict alone." Id. at 487, 120 S.Ct. 2348. *See also Sattazahn v. Pennsylvania*, 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) ("if the existence of any fact (other than a prior conviction) increases the maximum punishment that may be imposed on a Defendant, that fact—no matter how the State labels it—constitutes an element, and must be found by a jury beyond a reasonable doubt.") (citations omitted). However, "[j]udicial fact finding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." *Harris v. United States*, 536 U.S. 545, 558, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). *See also United States v. Yousef*, 327 F.3d 56, 162 n. 74 (2d. Cir.2003) (analyzing *Apprendi* and *Ring* and concluding that "[t]he fact that Yousef's and Ismoil's sentences were imposed by a judge, rather than a jury, does not implicate these precedents because there was no judicial fact-finding that exposed Yousef or Ismoil to greater punishment than that authorized by the jury's verdict.").

It follows that Duarte's first claim for relief turns upon whether the jury's verdict, convicting him on Counts Two and Three of the indictment, authorized the

Court's imposition of a sentence of life in prison. That question necessitates consideration of the provisions for punishment contained in the statutes under which Duarte was charged in those counts, as amplified by the United States Sentencing Guidelines ("USSG" or "the Sentencing Guidelines").

■ Count Two charged that Duarte and others violated 18 U.S.C. §§ 1959(a)(1) and (2) by acting in aid of racketeering activity, in that they "unlawfully, intentionally, and knowingly caused and aided and abetted the murder of Nelson Almonte, in violation of New York State Penal Law."[1] Count Three charged that Duarte violated 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(1)(C), and 2 by tampering with a witness, victim or informant, in that he "unlawfully, intentionally, and knowingly did kill and aid and abet the killing of another person," specifically, that Duarte "arranged for the contract murder of Nelson Almonte, a confidential informant."[2]

Thus Counts Two and Three both arose out of the murder of Almonte. Duarte's claim of a Sixth Amendment violation under *Apprendi* is based upon 18 U.S.C. § 1111. § 1111 forms a part of Chapter 51 of Title 18 of the United States Code, captioned "Homicide." § 1111 is captioned "Murder"; § 1112 is captioned "Manslaughter"; § 1113 is captioned "Attempt to commit murder or manslaughter." The succeeding sections in Chapter 51 deal with special circumstances. § 1111(a) provides in pertinent part:

Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by . . . any . . . kind of willful, deliberate, malicious, and premeditated killing . . . is murder in the first degree.

Any other murder is murder in the second degree.

18 U.S.C. § 1111(a) does not provide for the punishments applicable to murder in the first or second degrees. § 1111(b) provides that "[w]hoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life," but subsection (b) applies only to murders committed "[w]ithin the special maritime and territorial jurisdiction of the United States," and is inapplicable to the case at bar. The sentencing provisions for violations of § 1111(a) are found in USSG §§ 2A1.1 ("First Degree Murder") and 2A1.2 ("Second Degree Murder"). The base offense level under § 2A1.1 is 43. That is the highest level in the Sentencing Guidelines. It mandates a life term, however low a Defendant's criminal history category may be. The base offense level under § 2A1.2 is 33. That level does not require a life term, however high a Defendant's criminal history category may be.[3]

On this motion, Duarte contends that premeditation is an essential element of first degree murder under 18 U.S.C. § 1111(a); that the indictment against him did not charge premeditation; and that the Court charged the jury with respect to the elements of knowledge and willfulness, but said nothing about premeditation. All

---

**1.** I take it from the wording of Count Two that its reference to "2" was intended to charge Duarte under the aiding and abetting statute, 18 U.S.C. § 2, rather than § 1559(a)(2), which deals with "maiming," conduct the government did not undertake to prove at the trial.

**2.** Again, I construe the reference to "2" to be a charge under 18 U.S.C. § 2.

**3.** The discussion in text is based upon the Guidelines effective on November 1, 1998, which the Probation Department properly applied in its Pre–Sentence Report ("PSR"). *See* PSR, & 16.

these contentions are entirely correct. Duarte concludes from them that the Court implicitly found the fact of premeditation, a necessary predicate to a life sentence for first degree murder under USSG § 2A1.1, thereby violating his Sixth Amendment rights under *Apprendi* and *Ring*. Duarte argues that, absent the necessary jury finding of premeditation, he should have been sentenced in accordance with USSG § 2A1.2.

This argument has a surface appeal, but it fails for a number of reasons. Primarily, the government did not charge Duarte under 18 U.S.C. § 1111 and the jury did not convict him under that section. As noted, under Count Two, the jury convicted Duarte of violating 18 U.S.C. § 1959(a)(1). This subsection is found in Chapter 95 of Title 18, captioned "Racketeering." It provides that a violator shall be punished "for murder, by death or life imprisonment, or a fine under this title, or both ..." § 1959(a)(1), an integral part of the anti-racketeering statute, draws no distinction between murder in the first and second degrees.

Under Count Three, the jury convicted Duarte of violating 18 U.S.C. §§ 1512(a)(1)(A) and 1512(a)(1)(C), which one finds in Chapter 73 of Title 18 under the caption "Obstruction of Justice." Subsection 1512(3) provides in pertinent part:

The punishment for an offense under this subsection is—

(A) in the case of murder (as defined in section 1111), the death penalty or imprisonment for life, and in the case of

any other killing, the punishment provided in section 1112 ...

As with § 1959(a)(1), this subsection, an integral part of a statute intended to protect witnesses, crime victims, and informants, draws no distinction between murder in the first and second degrees. It requires a sentence of life imprisonment for murder generally. The intent of the § 1512(3) references to § 1111 and 1112, which are found in Chapter 51 of Title 18, made plain by the text of the statute, is to emphasize the distinction between "the unlawful killing of a human being with malice aforethought" (murder under § 1111) and "the unlawful killing of a human being without malice" (manslaughter under § 1112). The jury, by their verdict, convicted Duarte of a crime falling within the first of these two general categories.

I hold that violations of both 18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 1512(a)(1)(A), (C) authorize the passing of a life sentence upon the violator. The latter required, at a minimum, a life sentence. The jury convicted Duarte of these crimes on a unanimous verdict. No additional judicial fact finding was necessary to impose a life sentence in this case and the Court did not engage in that forbidden activity. The life sentence passed upon Duarte did not violate constitutional protections afforded to Duarte under *Apprendi* and its progeny.[4]

*Duarte's Second Asserted Ground for Relief*

 Duarte's second claim in the present motion argues that he was denied effective assistance of counsel. This claim

---

4. The PSR grouped Counts One, Two and Three under USSG § 3d1.2(a), *see* & 16, and stated at & 18 that "[t]he applicable guideline for Counts One through Three is § 2E1.3(a)(2), which directs that the offense applicable to the underlying crime or racketeering activity be used. As such, the applicable guideline is § 2A1.1(a) (first degree mur-

der), with a base offense level of 43." The PSR does not undertake a further explanation of its reference to "first degree murder" as opposed to "second degree murder" under USSG § 2A1.2. This does not raise any concerns in this case, however, where the jury's verdict authorized and mandated a life sentence under the statutory scheme.

relies on the assumption that Duarte's first claim is meritorious. It is not. Duarte cannot assert that his attorney's decision not to raise a claim without merit "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Duarte certainly was not prejudiced by the fact that a claim lacking merit was not made on his behalf. Duarte's motion is, therefore, denied as to the second claimed ground for relief.

*Duarte's Third Asserted Ground for Relief*

■ Duarte's third claim points out that the jury, to reach a finding of guilty on Count Five, as it did, must have relied on a previous finding of guilt on one of Counts One, Two, 3, or Four. Duarte argues that, given the structure of the verdict, it may be the case that some jurors reached a guilty verdict on Count Five by relying on their opinion that Duarte was guilty of charges contained in Count Four, for which Duarte was acquitted.

■ At trial the Court charged the jury on the necessity of unanimity in their verdict with respect to all particular elements of each crime. Charge at 20, 21, 102, 103. General unanimity instructions, such as this, are sufficient to guarantee unanimity in a verdict except in extremely complex cases where there is a genuine risk of jury confusion. *See United States v. Schiff,* 801 F.2d 108, 114–15 (2d Cir.1986). Nonetheless, the Court did pay particular attention to Count Five in its charge to the jury, directing that "Count Five is to be considered only if you first find the Defendant guilty of any of the other four counts as charged." Charge at 64. The Court further charged the jury with respect to Count Five that they could consider "the evidence of any other *proven* count." *Id.* (emphasis added). Under this direction the jury, in reaching a unanimous verdict on Count Five, could only consider facts related to other unanimously proved Counts, in this case Counts One, Two, and Three.

The analytical expectations laid on the jury by this Charge were not weighty. The Charge was sufficient to prohibit consideration of facts relating to unproven counts. Given the sufficiency of the charge and the fact that the jury returned unanimous verdicts of guilty on Counts One, Two, and Three, there is no reason to believe that the jury would have considered evidence limited to Count Four in reaching its verdict on Count Five.

■ Moreover, the constitutional requirement for a unanimous verdict amounts only to " 'a requirement of substantial agreement as to the principal factual elements underlying a specified offense.' " *McKoy v. North Carolina,* 494 U.S. 433, 450, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) quoting *United States v. Ferris,* 719 F.2d 1405, 1407 (9th Cir.1983). Here the jury demonstrated unanimity with respect to what Duarte did. The apparent disagreement evidenced by their acquittal on Count Four demonstrates doubt only with respect to whether or not retaliation was a primary motivating factor for murder and conspiracy to commit murder. Having demonstrated "substantial agreement" as to what Duarte did, Duarte's contention that they jury relied on evidence exclusive to Count Four in reaching its verdict on Count Five is implausible. Duarte's motion is denied as to the third asserted ground for relief.

Accordingly, Duarte's motion is denied

in its entirety.[5]

It is SO ORDERED.

---

**5.** I do not lose sight of the government's threshold contention that Duarte's § 2255 motion challenging the legality of his sentence is procedurally barred by his failure to raise these issues on his direct appeal. While this contention has some force, Duarte's failure may be excused by a demonstration of "cause" for the procedural default and "actual prejudice" resulting therefrom. *Billy–Eko v. United States*, 8 F.3d 111, 113–14 (2d Cir. 1993). A life sentence illegally imposed furnishes the most striking example imaginable of "actual prejudice" to an individual; and if that illegality was plain for all the world to see, counsel's failure to raise it on direct appeal might arguably constitute a constitutional deprivation of Duarte's right to the effective assistance of counsel, thereby satisfying the "cause" prong. Of course, the life sentence was not illegally imposed, for the reasons stated in text; but in the totality of circumstances I thought it better to consider's Duarte's claims on their merits, rather than refuse to consider them on procedural grounds.